UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ARCHITECT OF THE CAPITOL EMPLOYMENT DISPUTE<br><br>LEAD CASE: *Kraft v. Rexroat*,<br>_____<br><br>This Document Relates To:<br><br>ALL CASES | Misc. Action No. 24-0032 (TNM) |

**DEFENDANTS' MOTION TO DISMISS**
**AND MEMORANDUM IN SUPPORT THEREOF**

i

# TABLE OF CONTENTS

**BACKGROUND** ................................................................................................................ 2
**LEGAL STANDARD** ....................................................................................................... 5
**ARGUMENT** ..................................................................................................................... 5
**CONCLUSION** ................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

Cases

*Arnoldi v. Bd. of Trs., Nat'l Gallery of Art*,
  557 F. Supp. 3d 105 (D.D.C. 2021) .............................................................................. 7
*\*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ passim
*\*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 1, 5
*Blue Water Balt. v. Pruitt*,
  266 F. Supp. 3d 174 (D.D.C. 2017) .............................................................................. 4
*Brady v. Off. of Sergeant of Arms*,
  520 F.3d 490 (D.C. Cir. 2008) ..................................................................................... 6
*Brooks v. Grundmann*,
  748 F.3d 1273 (D.C. Cir. 2014) ................................................................................... 8
*Brown v. Brody*,
  199 F.3d 446 (D.C. Cir. 1999) ..................................................................................... 5
*Cannon v. District of Columbia*,
  717 F.3d 200 (D.C. Cir. 2013) ..................................................................................... 4
*Durant v. District of Columbia*,
  875 F.3d 685 (D.C. Cir. 2017) ..................................................................................... 8
*Educ., Inc.*,
  897 F.3d 232 (D.C. Cir. 2018) ..................................................................................... 8
*Holbrook v. Reno*,
  196 F.3d 255 (D.C. Cir. 1999) ..................................................................................... 6
*Neuren v. Adduci, Mastriani, Meeks & Schill*,
  43 F.3d 1507 (D.C. Cir. 1995) ................................................................................... 10
*Nurriddin v. Bolden*,
  818 F.3d 751 (D.C. Cir. 2016) ..................................................................................... 6
*Outlaw v. Johnson*,
  49 F. Supp. 3d 88 (D.D.C. 2014) ................................................................................. 8
*Ranowsky v. Nat'l R.R. Passenger Corp.*,
  244 F. Supp. 3d 138 (D.D.C. 2017) .............................................................................. 7
*Stella v. Mineta*,
  284 F.3d 135 (D.C. Cir. 2002) ..................................................................................... 5
*Townsend v. United States*,
  236 F. Supp. 3d 280 (D.D.C. 2017) .............................................................................. 6
*Waggel v. George Wash. Univ.*,
  957 F.3d 1364 (D.C. Cir. 2020) ................................................................................... 6
*Yuvienco v. Vilsack*,
  Civ. A. NO. 23-186 (RC), 2024 WL 727712 (D.D.C. Feb. 22, 2024)) ...................... 10

A business is struggling with its sales. Its product quality is excellent, but there simply are not enough customers to purchase the business's products. The chief executive knows a change must be made and decides to terminate the business's head of sales, marketing, and advertising, all of whom are males responsible for attracting customers to the business. The chief executive, however, does not terminate the company's operations, product, or information directors (all female) as the operations of the business and the quality of its products are not the issue. In such a situation, there is arguably a possibility that the chief executive acted unlawfully by firing the males and retaining the females, but, without more, there is no plausible inference of discrimination. Layer this lack of additional plausible allegations of discrimination with the fact that the terminated males oversaw the areas of the business's poor performance, and the retained females did not, then the possibility of discrimination drops to even less likely, i.e., improbable.

Like the case before the Court, the "mere possibility of misconduct" based simply on the genders of the employees fired and those retained—without more—is not enough to survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (holding that a plaintiff must allege enough facts to raise a plaintiff's claims beyond the level of speculation and must "nudge" the claims "across the line from conceivable to plausible"). This is on all fours with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007), where the Court held there is a "need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" liability. In *Twombly*, the Court rejected parallel business conduct as plausibly suggesting an antitrust violation as such conduct was merely consistent with, not plausibly suggesting, liability. Here, the Court should reject Plaintiffs' similar parallelism that terminating males serving in different roles than females plausibly suggests discrimination. This is especially so considering the financial and legal transgressions of former Architect of the Capitol

("Defendant" or "Agency"), Brett Blanton, fell under the purview of the positions held by the fired Agency executives (chief financial officer, chief of staff, chief administrative officer, and general counsel) and that the retained executives (working in engineering, physical safety, and government affairs positions) were completely unrelated to Blanton's violations. With this fact in the record, the likelihood of discrimination dips to improbable levels. Indeed, Plaintiffs' Amended Complaint alleges nothing that "nudge[s]" the claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

For this reason, among others, the Agency, by and through undersigned counsel, therefore, respectfully moves to dismiss Plaintiff's Amended Complaint, ECF No. 6, Am. Compl., pursuant to Rule 12(b)(6) for failure to state a claim.

## BACKGROUND

The following factual assertions, taken from Plaintiff's Amended Complaint, are presumed true only for purposes of evaluating the Amended Complaint's sufficiency under Rule 12(b)(6).

Plaintiff Jonathan Kraft, a white male in his sixties who served in the Army, was employed as the chief financial officer of the Architect of the Capitol. Am. Compl. ¶¶ 1, 2, 4. In his role as Blanton's chief financial officer, he was responsible for managing the budget, and he oversaw "financial matters" and "funding appropriations." *Id.* ¶¶ 26-27. Kraft "met on a regular basis" with Blanton, the removed Architect. *Id.* ¶ 27.

Plaintiff Peter Bahm, a white male in his late fifties who served in the Army, was employed as Blanton's chief of staff. *Id.* ¶¶ 5, 6, 8. Bahm "met on a regular basis" with Blanton. *Id.* ¶ 31. As chief of staff, Bahm "provided executive support and advice" to Blanton. *Id.* ¶ 33.

Plaintiff William O'Donnell, a white male in his late fifties who served in the Navy, was employed as Blanton's chief administrative officer. *Id.* ¶¶ 9, 10. In his role as chief administrative

officer, O'Donnell served as the "principal administrator." *Id.* ¶ 32. O'Donnell "met on a regular basis" with Blanton. *Id.* ¶ 31.

Plaintiff Jason Baltimore, a black male in his mid-fifties who served in the Navy, was employed as the general counsel. *Id.* ¶¶ 12-14. Baltimore "helped resolve legal matters, answered legal question, and reviewed the legality of proposed [Architect of the Capitol] actions." *Id.* ¶ 22. He "met on a regular basis" with Blanton. *Id.* ¶ 23.

Kraft, Bahm, Baltimore, and O'Donnell reported directly to Blanton. *Id.* ¶ 34.

Christine Leonard, the director of legislative and public affairs, complained to colleagues about the quantity of "white male veterans" in executive positions. *Id.* ¶¶ 40-41, 43. Leonard told others that Kraft, Baltimore, and O'Donnell engaged in "mansplaining" during work meetings and used "military language." *Id.* ¶ 44. Leonard asked Blanton to terminate Kraft, but Blanton refused. *Id.* ¶ 45.

In February 2023, President Biden fired Blanton for "a series of ethical violations involving impersonating a police officer, appropriating a public vehicle for private purpose, giving private tours of the Capitol, among other violations." *Id.* ¶ 48. Plaintiffs "had no advance knowledge of most of these allegations and learned about them at the same time as the public." *Id.* ¶¶ 49-50. In March 2023, the Office of Inspector General published a memo stating that seventeen Architect of the Capitol employees had previously received knowledge of Blanton's violations but failed to notify the Office of the Inspector General. *Id.* ¶ 56. Plaintiffs allege that Kraft "was not implicated" in the memo; and Bahm, O'Donnell, and Baltimore were "falsely implicated." *Id.*

In April 2023, Chere Rexroat, who was named Acting Architect of the Capitol after Blanton's removal,[1] terminated Plaintiffs "to improve the [Architect of the Capitol's] accountability." *Id.* ¶¶ 67-68, 85.  The four female executives, only one of whom was implicated in the Office of Inspector General report, "were not terminated." *Id.* ¶ 72.  According to Plaintiffs, the female executives—the deputy chief of staff, chief of security, director of legislative and public affairs, and chief safety officer— are "appropriate comparators" because, among other reasons, they "had similar levels of responsibilities as it relates to job duties" as the Plaintiffs.  *Id.* ¶ 73.  Plaintiffs acknowledge that one of the alleged comparators is a veteran and is black, and all four of them are over the age of forty.  *Id.* ¶¶ 77-80.  Plaintiffs allege that they were discriminated against "due to the intersectionality of their protected classes (age, gender, and veteran status)." *Id.* ¶ 82.

Plaintiffs sued Defendant for discriminatory termination based on gender under Title VII as incorporated by the Congressional Accountability Act (Count I); veteran status under the Uniformed Services Employment and Reemployment Rights Act (Count II); and age under the Age Discrimination in Employment Act (Count III).  *Id.* at 16-18.  Additionally, Baltimore brings a discriminatory termination and hostile work environment claim based on his race (black).  *Id.* at 18-19.

---

[1] Before joining the Architect of the Capitol in 2018 as Deputy Engineer, Ms. Rexroat had over 30 years of experience spanning numerous roles with the Department of Defense, the Navy, the Marine Corps, and the Army.  *See* https://www.aoc.gov/about-us/organizational-structure/office-chief-engineer/CEng.  In resolving a motion to dismiss, the Court may take judicial notice of information posted on official public websites of government agencies.  *E.g.*, *Cannon v. District of Columbia*, 717 F.3d 200, 205, n.2 (D.C. Cir. 2013); *Blue Water Balt. v. Pruitt*, 266 F. Supp. 3d 174, 177 n.4 (D.D.C. 2017).

Defendant now moves to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. The Court should grant Defendant's motion and dismiss Plaintiffs' Amended Complaint in its entirety.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests whether a complaint accomplished what it was obligated to do under the federal pleading rules. A claim will fail this inspection if it asserts a legal theory that is not cognizable as a matter of law or if the factual allegations are implausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The pleading must demonstrate that the allegations "possess enough heft" to show a plausible entitlement to relief. *Id.* at 557. Although a complaint need not contain detailed factual allegations, it must allege enough to raise a plaintiff's claims beyond the level of speculation and must "nudge" the claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680; *Twombly*, 550 U.S. at 557 n.5. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alterations in original).

## ARGUMENT

The Court should dismiss Plaintiffs' Amended Complaint because Plaintiffs fail to plead facts making it plausible that discrimination was at play. In a disparate treatment case, a plaintiff must plead facts that either directly or indirectly give rise to an inference that unlawful discrimination was the reason for an alleged adverse action. *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002); *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). "[A]t the motion-to-dismiss stage, the guiding lodestar is, [] assuming the truth of the factual allegations, taken collectively,

whether the inferences of discrimination drawn by the plaintiff are reasonable and plausibly supported." *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017) (citing *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (noting that the court "need not, however accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint") (internal quotations omitted)). For example, "discriminatory statements by the decisionmaker" may allow a factfinder to infer discriminatory intent for taking an adverse action. *Brady v. Off. of Sergeant of Arms*, 520 F.3d 490, 495 n.3 (D.C. Cir. 2008). On the other hand, "stray remarks by non-decisionmakers are not generally direct evidence of discrimination." *Waggel v. George Wash. Univ.*, 957 F.3d 1364, 1374 (D.C. Cir. 2020).

The central flaw of Plaintiffs' Amended Complaint is that they do not plead a single allegation that the deciding official, Ms. Rexroat, harbored any discriminatory animus towards Plaintiffs. Rather, the crux of Plaintiffs' Amended Complaint is that a colleague, Ms. Leonard, the director of legislative and public affairs, complained about the quantity of "white male veterans" in executive positions, as well as Plaintiffs' tendency to "mansplain[]" and use "military language." Am. Compl. ¶¶ 40-41, 43-44. But conspicuously absent from the Amended Complaint are any allegations regarding discriminatory statements by the deciding official, Ms. Rexroat, or other conduct or attitudes conveyed by Ms. Rexroat that raise a plausible inference of discrimination.

Moreover, Plaintiff does not plead any plausible allegations showing that Ms. Leonard "had input" into Ms. Rexroat's decision; this "break[] in the chain of causation" is a "fatal flaw" to Plaintiffs' discrimination claims. *Holbrook v. Reno*, 196 F.3d 255, 260-61 (D.C. Cir. 1999). Tellingly, in the section of Plaintiffs' Amended Complaint titled "Christine Leonard's Role and Influence on Chere Rexroat's Decision to Fire the Plaintiffs," Plaintiffs do not identify a single

allegation suggesting that Leonard had input into the termination decision or that she even discussed Plaintiffs' employment with Rexroat, which is particularly telling in these circumstances where Rexroat fired Plaintiffs very soon after she was named Acting Architect. Am. Compl. at 8-10.

Moreover, Ms. Rexroat belongs to many of the same protected classes as Plaintiffs: she is white (albeit one-fourth of Asian descent), she is over forty years old, and she performed numerous roles with the Department of Defense, the Navy, the Marine Corps, and the Army. *See* https://www.aoc.gov/about-us/organizational-structure/office-chief-engineer/CEng. "Courts in [this] District have repeatedly held that a decision-maker's inclusion in the same protected class as the terminated plaintiff cuts against any inference of discrimination." *Ranowsky v. Nat'l R.R. Passenger Corp.*, 244 F. Supp. 3d 138, 144 (D.D.C. 2017); *see also Arnoldi v. Bd. of Trs., Nat'l Gallery of Art*, 557 F. Supp. 3d 105, 120 (D.D.C. 2021) ("That the key decisionmakers fell within Arnoldi's protected class also weighs against a finding of discrimination.").

In addition to the overarching pleading deficiencies that span across all the discrimination claims, as to the veteran discrimination claim specifically, not only is Ms. Rexroat included in the same protected class as the Plaintiffs, but so is Plaintiffs' primary comparator, Ms. Hasberry. Am. Comp. ¶ 78. Likewise, all four of the comparators, in addition to Ms. Rexroat, are over the age of forty. *Id.* ¶¶ 77-80. And as to Baltimore's race discrimination termination claim, the Amended Complaint acknowledges that one of the comparators who was retained was the same race as him. *Id.* ¶ 78. Due to these impediments, Plaintiffs resort to the unsupported allegation of "intersectionality" discrimination, but Plaintiffs fail to even identify which combination of the protected classes that Defendant discriminated against, let alone plead any allegations that would support such a theory. *Id.* ¶¶ 81-84.

Baltimore also alleges that Defendants "through the Senate staffers, subjected [him] to a hostile work environment based on race." *Id.* ¶ 78. "To prevail on a hostile-work-environment claim, a plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 237 (D.C. Cir. 2018) (internal quotation marks omitted). "To assess a claim of hostile work environment, the court considers the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Durant v. District of Columbia*, 875 F.3d 685, 700 (D.C. Cir. 2017) (internal quotation marks omitted). "[C]ourts have been hesitant to find a claim for hostile work environment when a complaint contains no allegations of discriminatory or retaliatory intimidation, ridicule, or insult in [one's] day-to-day work environment." *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 91 (D.D.C. 2014) (cleaned up). Moreover, conduct that amounts merely to "a series of 'petty insults, vindictive behavior, and angry recriminations'" is "not actionable under Title VII" as a hostile work environment. *Brooks v. Grundmann*, 748 F.3d 1273, 1277-78 (D.C. Cir. 2014) (citation omitted).

Baltimore's allegations fall far short of showing that the alleged conduct was sufficiently severe or pervasive enough to amount to a hostile work environment. Baltimore generally alleges that he was "subject to hostile interactions," not by Defendant but by Senate Rules Committee staffers. Am. Compl. ¶ 63. With the exception of one instance when a staffer allegedly referred to Baltimore as "you people," Baltimore does not allege any other "hostile interactions," let alone interactions that rise to the level of altering the conditions of his employment or of the frequency that the law demands. *Id.* ¶¶ 63-66. Indeed, Baltimore alleges that Defendant removed him from

8

the alleged hostile work environment and ultimately permitted him to work remotely from his new home in California so that he could care for his elderly in-laws. *Id.* ¶¶ 64-65. Baltimore alleges that Senate staffers sought to have him removed due to his working remotely, *id.* ¶ 66, but Defendant disagreed and permitted remote work. Even taking Baltimore's allegations as true, they do not amount to a hostile work environment. Thus, the Court should dismiss the claim.

Lastly, Plaintiffs fail to state a gender discrimination claim. At most, the extent of Plaintiffs' allegations that purportedly support an inference of gender discrimination is that there were eight executives, and the four males were terminated, and the four females were not. *Id.* ¶¶ 72-73. Without more, however, this suggested inference based solely on numbers is insufficient to plead an actionable discrimination claim under the *Iqbal* and *Twombly* pleading standards. *See Iqbal*, 556 U.S. at 680 (holding that the "mere possibility of misconduct" is not enough to survive a motion to dismiss under Rule 12(b)(6)). Perhaps in some discrimination cases, a plaintiff can allege additional facts that "nudge[s]" the claims "across the line from conceivable to plausible," but Plaintiffs do not plead any such allegations, and therefore, the gender discrimination claim fails. *Id.* And when considering the fact that Blanton's financial and legal transgressions fell under the purview of the positions held by the fired Architect of the Capitol executives (chief financial officer, chief of staff, chief administrative officer, and general counsel), and that the retained executives were in engineering, physical safety, and government affairs positions that are completely unrelated to Blanton's violations, then the likelihood of discrimination dips to improbable levels. Plaintiffs' Amended Complaint alleges nothing that "nudge[s]" the claims "across the line from conceivable to plausible," *Iqbal*, 556 U.S. at 680, and therefore the Court should dismiss the gender discrimination claim.

9

Plaintiffs, in fact, allege facts that nudge their claims in the opposite direction. They admit that they knew about some of Blanton's violations. Am. Compl. ¶¶ 49-50 (alleging that they "had no advance knowledge of most of these allegations"). Indeed, the fact that Blanton's chief financial officer, chief of staff, chief administrative officer, and general counsel learned about Blanton's ethical violations "at the same time as the public" is precisely the problem. *Id.* It was perfectly reasonable for Rexroat to fire those who oversaw the financial, legal, and day-to-day affairs of Blanton when his transgressions came to light, while sparing the jobs of those who oversaw legislation, physical security, code compliance, and engineering. The fact that the four fired turned out to be males and the four retained turned out to be females were not the function of discrimination, but of the responsibilities of the executives' positions. *See Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (comparator evidence raises a plausible inference of discrimination only if plaintiffs "demonstrate that all of the relevant aspects of their employment situation were nearly identical") (internal quotation marks omitted).

Tellingly, the most that Plaintiffs plead on this front is that the four female executives "had similar level of responsibilities as it relates to job duties." Am. Compl. ¶ 73. Glaringly absent are any allegations about the scope of those responsibilities as they relate to Blanton's financial and legal transgressions. Ms. Hasberry, for example, was the chief security officer responsible for maintenance and security of the grounds and buildings. *See* https://www.aoc.gov/about-us/organizational-structure/office-chief-security-officer. Plaintiffs' conclusory allegations that the four executive females are "appropriate comparators"—without alleging the supporting facts, for instance, about the "similar level of responsibilities"—is inadequate to survive a motion to dismiss. *See Yuvienco v. Vilsack*, Civ. A. No. 23-186 (RC), 2024 WL 727712, at *4 (D.D.C. Feb. 22, 2024).

Because Plaintiffs fails to sufficiently allege plausible facts showing that Ms. Rexroat terminated them because of his sex, age, race, or veteran status, or that Defendant subjected Baltimore to a hostile work environment, the Court should dismiss the Amended Complaint in its entirety.

## CONCLUSION

For these reasons, the Court should grant Defendant's motion and dismiss Plaintiffs' claims in their entirety and with prejudice.

Dated: April 4, 2024
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:      */s/ M. Jared Littman*
M. JARED LITTMAN, PA Bar # 91646
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2523
Jared.Littman@usdoj.gov

*Attorneys for the United States of America*